◼ NATIONAL DAIRY PRODUCTS CORPORATION, Respondent, v. INSURANCE COMPANY OF NORTH AMERICA et al., Appellants.

APPEAL (1) from an order of the Supreme Court at Special Term, entered June 14, 1965 in New York County, which granted a motion by plaintiff for summary judgment and directing an assessment of damages, and (2) from the judgment thereon.

MEMORANDUM BY THE COURT. Order granting plaintiff's motion for summary judgment, and judgment entered thereon after an assessment of damages, affirmed, with $50 costs to plaintiff-respondent. The essential facts involved in this lawsuit are adequately stated in the dissenting opinion of Justice STEUER. This court is divided on only one aspect of plaintiff's motion for summary judgment. It is defendants' contention that plaintiff failed to establish that oil delivered by plaintiff for storage at Bayonne was ever delivered to the tank storage operated by Field which issued the warehouse receipts. Defendants conjecture, without adducing any proof, that the oil delivered by plaintiff was somehow diverted by Allied so that it never reached the storage tanks of Field or entered the interconnecting pipelines with those tanks. That surmise is repeated in hypothetical form in the dissenting opinion, but, as that opinion recognizes, there is no proof on that question. However, the documentary evidence submitted by plaintiff establishes that the oil content of each of the 200 tank cars was actually emptied into the connecting pipelines of Allied's tank storage facilities. In the face of this evidence, it was incumbent on defendants to present more than just speculation based on baffling aspects of the fraud perpetrated by Allied. In our opinion, plaintiff proved that its oil entered the pipelines of the Bayonne facilities and from that moment forward the oil was "at risk" under the policy issued by defendant insurers. If the interconnecting maze of pipeline facilitated the diversion of the oil, that fact does not permit any inference that the diversion occurred before the oil was

placed into the interconnecting pipelines. We, therefore, agree with Special Term that no triable issue was raised on that score. There is one matter in regard to the assessment of damages that merits mention. Appellants contend that on the assessment trial they were improperly refused an opportunity to establish that the contracts for the sale of the oil entered into between plaintiff and Allied contained provisions for the payment of margin, and that plaintiff had in fact received margin payments from Allied. It is appellants' contention that it was error to refuse to deduct from plaintiff's award the amount of the margin payments. The record establishes that plaintiff retained title to the entire oil delivered for the value of which it sues in this action. Under the insurance contract, plaintiff was entitled to the spot market value of that property on the day the loss became known to it. Under the terms of the contracts with Allied, the margin payments could be used by the plaintiff " to hold him free from loss due to any default of contract by buyer, including nonpayment of storage and handling charges to American Express ". The margin payments therefore have no bearing on the loss for which plaintiff sues under the insurance policy. There would be a different question if payments had been made by virtue of which title to some of the oil passed to Allied. But the record does not show any such payments. On the contrary, there is no proof in this record that title to any of the oil passed to Allied. Consequently, it was properly ruled that the margin payments could not be set off against any claim made under the insurance policy.

STEUER, J. (dissenting). We believe there are factual issues presented which preclude the granting of summary judgment.

The action is upon several policies of insurance on oils and fats in storage " in tanks * * * sub-leased to Harbor Tank Storage Company and American Express Field Warehousing Corporation " and " In connecting pipelines * * * during the process of being transferred between and being placed in or removed from such tanks ". The proof shows that Allied Vegetable Oil Refining Corporation (herein Allied) was the lessee of a vast industrial network in Bayonne, New Jersey, consisting in part of several units of storage tanks for vegetable oils. These units were connected by pipelines through which the oil could be brought into the tanks, delivered out, or transferred from tank to tank or unit to unit. One of these units was subleased by Allied to American Express Field Warehousing Corporation (herein Field). As appears from the quoted portion of the policies, it was only oil in the Field units or in connecting pipelines during the process of being brought into or removed from Field unit tanks that was covered.

The oil that is the subject of this suit was brought by plaintiff in railroad tank cars to the general storage area. Employees of Allied received it. The fact of the arrival of the oil and its receipt is established by the receipts of Allied and the reverse bills of lading for the empty tanks cars. The proof further establishes, with a degree of certainty that for the purposes of this motion we are willing to accept, that the only way the tank cars can be unloaded is by allowing the oil to run out into a pipeline. The pipelines in question led into the entire complex and the oil at this point might have been directed to the Field tanks or any other tanks in the complex. The difficulty with the case is that there is no proof as to where the oil was being directed, either at this point or any subsequent time. If Allied had determined to misappropriate the oil and directed it to be delivered from the pipeline into which it went from the tank cars to tanks outside the Field units, the oil was never being transferred to the Field tanks and never came under the coverage of the policies. Of course, if the oil at this point was destined for the Field tanks, it was in a connecting pipeline and subject to coverage of the policies. But there is no proof either

way on this question. The plaintiff has therefore failed to establish a loss under its policies and summary judgment should be denied.

Valente, McNally and Stevens, JJ., concur in Memorandum by the court; Steuer, J., dissents in opinion in which Rabin, J. P., concurs.

Order granting plaintiff's motion for summary judgment affirmed, etc.